## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| GURPREET SINGH SANDHU, | : | |
| | : | |
| Petitioner, | : | Civil Action No. 25-14607 (BRM) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JOHN TSOUKARIS, *et al.*, | : | |
| | : | |
| Respondents. | : | |

Before the Court is Petitioner Gurpreet Singh Sandhu's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 challenging his continued detention. (ECF No. 1.) Respondents filed an opposition (ECF No. 5), and Petitioner replied (ECF No. 6). Having reviewed and considered the parties' submissions filed in connection with the Petition, and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b), for the reasons set forth below and for good cause appearing, Petitioner's § 2241 Petition is **DENIED**.

## I. BACKGROUND

Petitioner, a citizen of India, entered the United States in 2000, when he was under the age of 16 and has lived in the United States since that time.[1] (ECF No. 1 at 3; see ECF No. 5-2.) The following year, in 2001, Petitioner's stepmother filed a Form I-130, Petition for Alien Relative,

---

[1] Respondents submit that Petitioner entered the United States without inspection in 2000. (ECF No. 5 at 10.) Petitioner does not admit to this fact. (*See* ECF No. 6 at 3.) However, Petitioner was arrested in the interior of the United States in 2025 after living here for twenty-five years and is detained under 8 U.S.C. § 1226.

which was approved on September 1, 2006. (ECF No. 1 at 4.) The I-130 petition was later revoked. (*Id.*)

In July 2012, Petitioner married Mandeep Kaur, and the couple had a United States citizen daughter. (*Id.*) In September 2012, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA") stating he was subject to removal for being a noncitizen "present in the United States who has not been admitted or paroled" under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), currently codified as 8 U.S.C. § 1182(a)(6)(A)(i).[2] (*Id.*; ECF No. 5-2.) On October 4, 2012, an immigration judge ("IJ") ordered Petitioner released on bond of $6,000 under 8 C.F.R. § 236.1(c). (ECF No. 1 at 5; ECF No. 5-3.)

In January 2015, an IJ found Petitioner removable in absentia, however, in April 2015, the IJ granted Petitioner's motion to reopen the removal case. (ECF Nos. 5-4, 5-5.) In May 2016, a United States Immigration and Customs Enforcement ("ICE") special agent granted Petitioner deferred action for a period of one year. (ECF No. 5-6.) In June 2016, the IJ administratively closed Petitioner's removal proceeding upon joint consent and motion of the parties, explaining "proceedings may be recalendared at any time upon either party's motion, and this order does not constitute a final judgment rendered on the merits of these proceedings." (ECF No. 5-7.) In March 2017, ICE cancelled and refunded Petitioner's $6,000 bond. (ECF No. 5-8.)

In May 2025, ICE filed a motion to re-calendar Petitioner's removal proceedings. (ECF No. 5-9.) On May 21, 2025, DHS issued a warrant for Petitioner's arrest, arrested Petitioner, and detained him. (ECF Nos. 5-10, 5-11.) Petitioner received a Notice of Custody Determination

---

[2] The NTA also charged Petitioner as being inadmissible under INA § 212(a)(2)(A)(i)(I), currently codified as 8 U.S.C. § 1182(a)(2)(A)(i)(II), based on a 2004 criminal drug conviction that has since been vacated. The immigration judge found the charge to be "not sustained." (ECF No. 1 at 4; ECF No. 5-2 at 4.)

explaining, "ICE has determined that you are subject to discretionary detention under [8 U.S.C. § 1226(a)]." (ECF No. 5-11 at 3-4.)

Petitioner requested a custody redetermination and, on July 14, 2025, an IJ denied Petitioner's request for change in custody status, finding Petitioner "is a danger to the community and a flight risk." (ECF No. 1-9.) At the bond hearing ICE argued for the first time that Petitioner is an "applicant for admission" and, therefore, subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (ECF No. 5-12 at 2.) The IJ disagreed and found that Petitioner is detained under 8 U.S.C. § 1226(a) and subject to discretionary detention. (*Id.* at 2-3.) However, the IJ denied bond finding Petitioner failed to meet "his burden of proof to show that he is neither a danger to the community nor a flight risk." (*Id.* at 3-4.) The IJ explained that although Petitioner's 2003 guilty plea on cocaine distribution charges was vacated in 2011, he failed to present evidence of the underlying circumstances of that conviction. Additionally, Petitioner had a second conviction "for conspiracy to tamper with public records" in 2016 and failed to present evidence regarding the underlying facts for that conviction. (*Id.* at 4.) Finally, the IJ found that Petitioner failed to show he was not a flight risk. The IJ noted that although Petitioner is married to a United States citizen and has children, "it is not clear that [Petitioner] lives with his wife and children nor is there any explanation as to why his wife never filed a visa petition for him considering she naturalized a considerable number of years ago." (*Id.*) Petitioner filed an appeal to Board of Immigration Appeals ("BIA"). (*See* ECF No. 5-13.)

Petitioner is presently detained in Delaney Hall, and his removal proceedings are ongoing. It does not appear that there is a final order of removal.

Petitioner filed his two-count petition under 28 U.S.C. § 2241. (ECF No. 1.) In Count One, Petitioner argues his detention violated 8 U.S.C. § 1226(a)–(b), as he was re-detained without "any

prior authorization from an Immigration Judge or other delegate of the Attorney General, despite the prior grant of bond in 2012." (*Id.* at 8–10.) In Count Two, Petitioner claims his detention is in violation of his constitutional right to due process under the Fifth Amendment. (*Id.* at 10–11.) Petitioner claims that because he had already been granted bond, he was entitled to pre-detention process to determine whether he should be re-detained. (*Id.*) Respondents filed an answer (ECF No. 5), and Petitioner replied (ECF No. 6.)

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). A district court's authority includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The burden is on petitioner to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III.  DECISION

### A.  Statutory Framework

At the outset, the parties disagree on the statutory basis for Petitioner's detention pending removal proceedings. (*Compare* ECF No. 1 at 8-10 *with* ECF No. 5 at 13-19.)  The parties disagree on whether Petitioner is detained under 8 U.S.C. § 1225(b)(2), and is subject to mandatory detention, or § 1226(a), and is subject to discretionary detention.

Section 1225(b) is entitled "Inspection of applicants for admission." 8 U.S.C. § 1225(b). The term "applicant for admission" is deemed to include is a noncitizen who "arrives in the United States, or 'is present' in this country but has not been admitted." § 1225(a)(1). Section 1225(b) describes two classes of applicants for admission: (1) noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" and "certain other aliens designated by the Attorney General in his discretion," and (2) a catchall provision "that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions . . . )"). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Most noncitizens under § 1225(b)(1) are ordered removed "without further hearing or review" under § 1225(b)(1)(A)(i). *Id.* Others who fall under § 1225(b)(1) are detained when they state an intention to apply for asylum and are determined in an interview to have a credible fear of persecution. *Id.*

Noncitizens covered under the broader scope of § 1225(b)(2) "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Id.* at 288. Under either subsection of § 1225(b), "applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" *Id.* (quoting 8 U.S.C. § 1182(d)(2)(5)(A)). This type of "parole" is not an "admission" pursuant to 8 U.S.C. § 1182(d)(5)(A). *Id.*

In contrast, traditionally, the detention of noncitizens who have resided in the United States for substantial periods of time is governed by 8 U.S.C. § 1226(a), entitled "Arrest, detention, and release." Section 1226(a) states that "[o]n a warrant issued by the [Secretary], an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226(a) further provides that, subject to certain exceptions, the Secretary "may continue to detain the arrested alien" or "may release the alien" on a bond or

conditional parole. 8 U.S.C. § 1226(a)(1), (2). Under applicable regulations, if ICE determines pursuant to § 1226(a) that a noncitizen will be detained, that individual may seek review of the detention decision by requesting a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d), 1003.19; 1236.1(d).

"On July 8, 2025, DHS instituted a notice titled 'Interim Guidance Regarding Detention Authority for Applicants for Admission' to all ICE Employees." *Vazquez v. Feeley*, No. 2:25-cv-01542, 2025 WL 2676082, at *5 (D. Nev. Sept. 17, 2025). "Under the new interpretation and policy, individuals 'present in the United States without admission or parole' are now treated as 'applicants for admission' subject to mandatory detention under § 1225(b)(2), rather than discretionary detention under § 1226(a)." *Soto v. Soto, et al*., No. 25-cv-16200, 2025 WL 2976572, at *2 (D.N.J. Oct. 22, 2025). "Thus, nearly all noncitizens who have never been admitted, regardless of whether they were stopped at the border or arrested years later inside the country, are now classified as an 'applicant for admission' that is 'seeking admission' into the country under § 1225(b)." *Id.*

In September 2025, the Board of Immigration Appeals ("BIA") issued a decision finding that all noncitizens who are applicants for admission, as defined by 8 U.S.C. § 1225(a)(1), are subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) for the pendency of their removal proceedings, regardless of the length of time they have been present in the United States, and therefore are ineligible for bond hearings. *Matter of Yajure-Hurtado*, 29 I&N Dec. 216, 220 (BIA 2025).

Respondents argue that Petitioner is detained under § 1225(b)(2). In support of this argument, Respondents submit that the NTA charged Petitioner with being "an alien present in the United States who has not been admitted or paroled in violation of INA § 1182(a)(6)(A)(i)." (ECF

No. 5 at 14.) Respondents claim that Petitioner is an "applicant for admission" as defined by 8 U.S.C. § 1225(a) because he is "present in the United States without admission or parole." (*Id.* at 14-15.) Respondents ask this Court to find that § 1225(b)(2)'s "seeking admission" element, applies to Petitioner based on the simple fact that Petitioner is present in the United States without admission.

The issue of whether Petitioner is properly detained under § 1225(b) or § 1226(a) is similar to that of many cases in this District and around the country. "The line historically drawn between these two sections . . . is that section 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'" *Martinez v. Hyde*, No. 25-cv-11613, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) (citing *Jennings*, 583 U.S. at 288–89); *see also Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025) ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-six years and was already within the United States when apprehended and arrested during a traffic stop, and not upon arrival at the border."). "[T]he provisions at issue here are mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226 . . . ." *Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025).

Here, Petitioner was not seeking to be admitted at the border when he was detained. Rather, he had been present in the United States for twenty-five years. Petitioner's 2012 NTA specifically identified Petitioner as removable as "an alien *present* in the United States who has not been admitted or paroled." (ECF No. 5-2.) Furthermore, on October 4, 2012, an IJ ordered Petitioner released on bond of $6,000 under 8 C.F.R. § 236.1(c). (ECF No. 1 at 5; ECF No. 5-3.) "Notably,

the issuing officer appears to have explicitly declined to designate Petitioner as an 'arriving alien,' which is the active language used to define the scope of section 1225(b)(2)(A) . . . ." *Martinez*, 2025 WL 2084238, at *6. "A noncitizen like Petitioner, who has already entered and is present in the country, simply cannot be characterized as 'seeking entry' consistent with the ordinary meaning of that phrase." *Vazquez v. Feeley*, No. 2:25-cv-01542, 2025 WL 2676082, at *13 (D. Nev. Sept. 17, 2025); *see also Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *3 (D.N.J. Sept. 26, 2025) (noting that "up until July 8 the predominant form of detention authority for petitioner and other noncitizens arrested in the interior of the United States was § 1226(a)").

Additionally, Petitioner's May 2025 Notice of Custody Determination states "ICE has determined that you are subject to discretionary detention under [8 U.S.C. § 1226(a)]." (ECF No. 5-11 at 3-4.) At the bond hearing, the IJ disagreed with ICE's position that Petitioner is an "applicant for admission" and, therefore, subject to mandatory detention under 8 U.S.C. § 1225(b)(2), finding that Petitioner is detained under 8 U.S.C. § 1226(a) and subject to discretionary detention. (ECF No. 5-12 at 2–3.) Therefore, it seems from the record that "DHS has consistently treated [Petitioner] as subject to detention on a discretionary basis under § 1226(a), which is fatal to Respondents' claim that he is subject to mandatory detention under § 1225(b)." *Lopez Benitez*, 2025 WL 2371588, at *3.

In examining the relevant provisions of §§ 1225 and 1226, the Court considers "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). The Court's "job is to interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'" *Wis. Cent. Ltd v. U.S.*, 585 U.S. 274, 277 (2018) (quoting *Perrin v. U.S.*, 444 U.S. 37, 42 (1979)). "It is a fundamental canon of statutory construction that the words of a statute must be read in their

context and with a view to their place in the overall statutory scheme." *City & Cnty. of San Francisco, California v. Env''t Prot. Agency*, 604 U.S. 334, 350 (2025) (citation modified).

Section 1225 is titled, "Inspection by immigration officers; expedited removal of inadmissible *arriving aliens*; referral for hearing." (emphasis added). A title, such as this "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring in judgment). Section 1225(a)(1) defines an "applicant for admission" as a noncitizen "who has not been admitted or who arrives in the United States." The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13).

In contrast, the text of § 1225(b)(2)(A) mandates detention only of noncitizens "*seeking admission*" after an "examining immigration officer" determines that the alien "is not clearly and beyond a doubt entitled to be admitted." (emphasis added). Section 1225(b)(2) plainly contemplates present affirmative conduct by 1) a noncitizen who is "seeking admission" and 2) and an inspecting immigration official who must determine whether that individual is entitled to admission to the United States. *See, e.g.*, *Martinez*, 2025 WL 2084238, at *2. Therefore, even if Petitioner could be deemed "an applicant for admission" under § 1225(a)(1), as Respondents argue, he does not meet the requirements of § 1225(b)(2), because he was not "seeking entry" nor inspected by immigration officials.

Whereas § 1225 governs the treatment of "arriving aliens," § 1226 is much broader, referring to all other aliens not lawfully present but not arriving. Section 1226 addresses "[a]pprehension and detention of aliens" who are not in the process of seeking admission to the United States.

For nearly 30 years, § 1225 has applied to noncitizens who are either seeking entry to the United States or have a close nexus to the border, and § 1226 has applied to those aliens arrested within the interior of the United States. The Supreme Court in *Jennings* explicitly adopted this distinction, describing § 1225 as the detention statute for noncitizens affirmatively "seeking admission" into the United States, and § 1226 as the detention statute for noncitizens who are "already in the country." 583 U.S. at 289. And although the *Jennings* Court characterizes § 1225(b)(2) as the "catchall" detention provision for noncitizens who are "seeking admission," it identifies § 1226(a) as the "default rule" for the arrest, detention, and release of non-criminal aliens who are already present in the United States. *Id.* at 303.

The vast majority of courts confronting this precise issue have rejected Respondents' interpretation, as well as the BIA's interpretation in *Hurtado*, as contradictory to the plain text of § 1225.[3] *See, e.g.*, *Soto*, 2025 WL 2976572, at *7 (finding that § 1225(b)(2)(A) applies only to noncitizens who are actively, *i.e.*, affirmatively, "seeking admission" to the United States and not petitioners who have been residing in the United States); *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947 at * 6 (D. Minn. Oct. 1, 2025) (noting that "the government's proposed interpretation of § 1225(b) [is] at odds with the context and structure of the provisions governing detention of noncitizens who are arriving at the border and those who are already present in the country"); *Zumba*, 2025 WL 2753496 at * 3 (noting that "up until July 8 the predominant form of detention authority for petitioner and other noncitizens arrested in the interior of the United States was § 1226(a)"); *Salazar v. Dedos*, No. 25-cv-835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025);

---

[3] This Court is not required to defer to the BIA's interpretation of § 1225 because "[w]hen the meaning of a statute [is] at issue, the judicial role [is] to 'interpret the act of Congress, in order to ascertain the rights of the parties.'" *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 385 (2024) (quoting *Decatur v. Paulding*, 39 U.S. 497, 503 (1840)).

*Lepe v. Andrews*, No. 25-cv-01163, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Roman v. Noem*, No. 25-cv-01684, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); *Giron Reyes v. Lyons*, No. 25-cv-4048, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Singh v. Lewis*, No. 25-cv-0096, 2025 WL 2699219 (W.D. Ky. Sept. 22, 2025); *Barrera v. Tindall*, No. 25-cv-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Hasan v. Crawford*, No. 25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Vazquez v. Feeley*, No. 2:25–cv–01542, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); *Lopez Santos v. Noem*, No. 25-cv-1193, 2025 WL 2642278 (W.D. La. Sept. 11, 2025); *Perez v. Kramer*, No. 25-cv-3179, 2025 WL 2624387 (D. Neb. Sept. 11, 2025); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 at  * 5 (E.D. Mich. Sept. 9, 2025); *Hinestroza v. Kaiser*, No. 25-cv-7559, 2025 WL 2606983 (N.D. Cal. Sept. 9, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-cv-326, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Leal-Hernandez v. Noem*, No. 25-cv-2428, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Lopez-Campos v. Raycroft*, No. 25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Lopez Benitez*, 2025 WL 2371588. This Court is persuaded by the comprehensive reasoning of these courts and finds that § 1226(a) applies to Petitioner's detention.

Here, Petitioner was not "seeking admission" when he was detained on May 21, 2025. Rather, Petitioner has been living in the United States for twenty-five years. (ECF No. 1.) On May 21, 2025, DHS issued a warrant for Petitioner's arrest, arrested Petitioner, and detained him. (ECF Nos. 5-10, 5-11.) Petitioner received a Notice of Custody Determination explaining, "ICE has determined that you are subject to discretionary detention under [8 U.S.C. § 1226(a)]." (ECF No. 5-11 at 3-4.) Petitioner's detention began in May 2025, not as he entered the country seeking admission but when he was arrested and detained under § 1226(a). The Court finds Petitioner detained under § 1226(a).

### B. Constitutional Claims

Petitioner argues his constitutional due process rights have been violated. First, Petitioner claims that in 2017, DHS unlawfully revoked his bond in violation of § 1226. (ECF No. 1 at 10.) Second, Petitioner argues he was entitled to a pre-detention hearing, where the government must show by clear and convincing evidence that he is a danger to the community or a flight risk. (*Id.* at 10-11.) Petitioner argues that because the IJ granted release Petitioner on bond in 2012, DHS could not unilaterally revoke that bond in 2017. (*Id.*) Therefore, Petitioner argues DHS could not re-detain Petitioner in 2025 "without any prior authorization from an Immigration Judge or other delegate of the Attorney general." (*Id.* at 10.)

Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on—
> >
> > > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > >
> > > (B) conditional parole

Section 1226(b) provides that "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." The Homeland Security Act of 2002 "transferred virtually all immigration enforcement and administrative functions vested in the Attorney General to the Secretary of Homeland Security." *Szentkiralyi v. Ahrendt*, No. 17-1889 (SDW), 2017 WL 3477739, at *4 (D.N.J. Aug. 14, 2017). However, DHS can still delegate certain duties to IJs under 8 U.S.C. § 1226(a). *Id.*

12

Petitioner argues that although "Attorney General" can refer to DHS, the "best reading of 8 U.S.C. § 1226(a)-(b) is that the 'Attorney General' who 'may revoke bond'" under § 1226(b) is the same "Attorney General" who "released the alien on bond" [sic] under § 1226(a)," *i.e.*, the IJ. (ECF No. 1 at 8.) Petitioner claims that § 1226 should not be read to allow DHS, rather than an IJ, to revoke a bond that was granted by an IJ. (*Id.* at 8-9.) Therefore, Petitioner argues Respondents violated § 1226(a)-(b) when they revoked his bond and later re-detained Petitioner without any prior authorization form an IJ, despite him being previously granted bond. (*Id.* at 10.)

In 2012, the IJ granted Petitioner's release on $6,000 bond under 8 C.F.R. § 236.1(c). (ECF No. 1 at 5; ECF No. 5-3.) In May 2016, an ICE special agent granted Petitioner deferred action for a period of one year. (ECF No. 5-6.) In June 2016, the IJ administratively closed Petitioner's removal proceeding upon joint consent and motion of the parties. (ECF No. 5-7.) Following the administrative closing of Petitioner's removal proceeding, ICE cancelled and refunded Petitioner's $6,000 bond in March 2017. (ECF No. 5-8.)

Petitioner appears to argue that when ICE cancelled and returned his bond, they effectively "revoked" the bond. Petitioner claims they were not lawfully permitted to "revoke" the bond that was granted by an IJ. The Court disagrees.

First, DHS did not revoke Petitioner's bond in 2017 and re-detain him. Rather, the bond was returned to Petitioner, following the IJ decision to administratively close Petitioner's removal proceedings. Section 1226(a) does not require DHS to detain a non-citizen unless they are released on bond. Rather, that section reads that "an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." § 1226(a) (emphasis added.) Here, DHS returned the bond and permitted Petitioner to remain un-detained following the administrative closing of his proceedings. Petitioner fails to point to any authority that the return

13

and cancelling of his bond, while he remained free from detention, was a revocation of the bond that would have required IJ approval. Petitioner was not on bond from 2017 through his re-detention in 2025.

The order administratively closing Petitioner's removal explained that the "proceeding may be recalendared at any time upon either party's motion, and this order does not constitute a final judgment rendered on the merits of these proceedings." (ECF No. 5-7.) In May 2025, Respondents chose to re-calendar Petitioner's removal proceedings. At that time, pursuant to § 1226(a), following the issuance of an arrest warrant, DHS was permitted to detain Petitioner pending a removal decision.

Additionally, DHS "at any time may revoke a bond or parole" issued pending a removal decision and then "rearrest the alien under the original warrant." 8 U.S.C. § 1226(b); *see also* 8 C.F.R. 236.1(c)(9). However, DHS's discretion to revoke release is limited to situations in which there has been a 'change [of] circumstance' since the non-citizen was initially released. *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981). Title 8, § 1236.1(c)(9) of the C.F.R. currently provides:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. § 1236.1(c)(9); *accord* 8 C.F.R. § 236.1(c)(9). Although, the Court finds that DHS did not "revoke" Petitioner's bond in 2017, it is noted that § 1226(b) permits them to do in certain situations.

14

Because Petitioner was not released on bond in 2025, DHS was permitted to re-detain him following the re-calendaring of his removal proceedings and the issuance of an arrest warrant. Section 1226 provides DHS with discretion to arrest and detain non-citizens. § 1226(a). Immigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge. 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citations omitted). Here, DHS re-calendared Petitioner's removal proceedings and then, under § 1226(a), had the authority to detain Petitioner. Petitioner then requested and received a bond hearing before an IJ. The IJ denied bond, finding Petitioner failed to meet "his burden of proof to show that his neither a danger to the community nor a flight risk." (ECF No. 5-12 at 3-4.)

Petitioner also argues that his 2025 bond hearing was constitutionally deficient. (ECF No. 1 at 10-11.) Petitioner claims that because he was released on bond, Petitioner was entitled to a pre-detention hearing bond revocation hearing, where the burden was on the Government to establish by clear and convincing evidence that Petitioner was a danger to the community or a flight risk. (*Id.*) However, as discussed above, Petitioner was not released on bond at the time he was detained on an arrest warrant in May 2025. DHS detained Petitioner under § 1226(a)'s discretionary authority. Individuals detained pursuant to the discretionary detention statute, § 1226(a), are entitled to a bond hearing. *See* 8 C.F.R. § 1003.19(c); *Garcia v. Green*, No. 16–0565, 2016 WL 1718102 (D.N.J. Apr. 29, 2016). When a non-citizen is detained under § 1226(a), they may request a bond hearing before an IJ. *See*, *e.g.*, *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278–79 (3d Cir. 2018). At a bond hearing under the statute, the non-citizen bears the burden of proving that he is neither a danger to the community nor a flight risk. *Id.* at

15

279. Here, Petitioner received a bond hearing, where the IJ found he had not met his burden of showing he was not a danger to the community or a flight risk.

Although Petitioner does not explicitly challenge the IJ's denial of bond in May 2025, Petitioner argues the IJ should have considered his 2012 grant of bond. The Court does not have subject matter jurisdiction to review the immigration judge's bond determination. The statute governing detention of removable aliens prior to a final order of removal, 8 U.S.C. § 1226, states "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). The Third Circuit has repeatedly recognized that this language means what it says: courts may not reverse an administrative decision denying bond in an immigration proceeding. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018). Therefore, because any review of the IJ's bond hearing that resulted in the denial of bond would necessarily "set aside" the IJ's decision, it is clearly barred by § 1226(e).

## IV. CONCLUSION

For the reasons set forth above, Respondents shall treat Petitioner as detained under § 1226(a). Petitioner has already received an individualized bond hearing before an immigration judge. Therefore, Petitioner's § 2241 habeas petition (ECF No. 1) is **DENIED**. An appropriate Order follows.

Dated: November 20, 2025

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**